UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>1.) Gerardo GUILLEN-Guiltron,<br>2.) Martin GUILLEN-Guiltron<br>2.) Joel CORTEZ-Mendoza<br>                 Defendant(s) | Magistrate Case No.<br>**08 MJ 1692**<br>COMPLAINT FOR VIOLATION OF:<br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal<br>Aliens<br><br>Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii)<br>Bringing in Illegal Aliens Without<br>Presentation |

The undersigned complainant, being duly sworn, states:

### COUNT ONE

On or about **May 27, 2008**, within the Southern District of California, defendant **Gerardo GUILLEN-Guiltron** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Emmanuel ROJAS-Roman, Jorge HERNANDEZ-Sanchez, and Sergio SALAZAR-Martinez** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

### COUNT TWO

On or about **May 27, 2008**, within the Southern District of California, defendant **Martin GUILLEN-Guiltron and Joel CORTEZ-Mendoza** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Emmanuel ROJAS-Roman, Jorge HERNANDEZ-Sanchez, Sergio SALAZAR-Martinez,** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 29th DAY OF **MAY, 2008**

Jan M. Adler
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Gerardo GUILLEN-Guiltron
Martin GUILLEN-Guiltron
Joel CORTEZ-Mendoza

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Emmanuel ROJAS-Roman, Jorge HERNANDEZ-Sanchez, Sergio SALAZAR-Martinez,** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On Tuesday, May 27, 2008, United States Border Patrol Agents assigned to the East County Abatement Team were conducting smuggling interdiction operations near Pine Valley, California. The community of Pine Valley, California is located approximately 12 miles north of the United States/ Mexico International Border and 7 miles east of the Tecate Port of Entry in Tecate, California.

At approximately 10:15 p.m., Supervisory Border Patrol Agent Dinise was traveling westbound on Old Highway 80 in his unmarked Agency vehicle when he observed a Dodge Intrepid followed by a white Ford F-250 Truck traveling eastbound from the community of Guatay. Old Highway 80 between the town of Pine Valley and the town of Guatay is mostly traveled by local residents because of the remote location and lack of amenities. During the later hours of darkness the traffic on Old Highway 80 is minimal and vehicles traversing this area are rarely encountered. Agent Dinise, finding it unusual that two vehicles would be traveling on Old Highway 80 during this time and in such close proximity, turned around and began to conduct mobile surveillance on the two vehicles. The two vehicles turned south onto Pine Valley Road and then entered onto the westbound lanes of Interstate 8, where Border Patrol Agents Blanchard and Remenar in their unmarked vehicles began to assist in the surveillance efforts.

At approximately 10:25 p.m., Agents Dinise and Blanchard continued to follow the Dodge as it accelerated and gained distance on the Ford. At approximately 10:30 p.m., Agent Remenar observed the Ford pull onto the shoulder of Interstate 8, approximately one mile east of the Highway 79 Exit. After approximately 30 seconds the Ford merged back onto the Interstate. Agent Remenar observed that the vehicle now had several occupants in the passenger compartment as opposed to the single occupant that Agent Blanchard had initially observed. Agents Dinise, Blanchard, Remenar were joined by Border Patrol Agent Rivera as the two vehicles passed Highway 79 on Interstate 8. The two vehicles continued traveling west on Interstate 8 with a short distance between them as they approached the City of El Cajon.

At approximately 10:53 p.m., Agent Rivera conducted a vehicle stop on the white Ford F-250 on Interstate 8, one mile east of the Mollison Ave Exit. The Ford stopped on the shoulder of Interstate 8, near the Mollison Ave Exit. Agents Rivera, Blanchard, and Remenar approached the Ford, physically and verbally identified themselves as United States Border Patrol Agents, and observed several individuals lying in the bed of the truck. Agent Rivera questioned the driver later identified as, **Gerardo GUILLEN-Guiltron**, and the right front seat passenger later identified as, **Martin GUILLEN-Guiltron** as to their citizenship. All three passengers in the front cab of the truck stated that they were citizens/nationals of Mexico present in the United States without the proper immigration documentation to be or remain here legally. Agents Remenar and Blanchard then individually questioned the nine passengers lying in the bed of truck as

CONTINUATION OF COMPLAINT:
Gerardo GUILLEN-Guiltron
Martin GUILLEN-Guiltron
Joel CORTEZ-Mendoza

to their citizenship, to which each stated that they were citizens/nationals of Mexico present in The United States with immigration documentation for them to be or remain here legally. At approximately 10:55 p.m., Agent Rivera arrested the driver of the Ford truck for alien smuggling, and the other eleven remaining illegal aliens were arrested.

While Agent Rivera was conducting the vehicle stop on the Ford Truck, Agent Dinise was following the Dodge as it exited Interstate 8 at Second Street in El Cajon, California. The Dodge turned south on Second Street and then east onto E. Lexington Ave. By this time the occupants of the Dodge realized that Agent Dinise was following them. The Dodge abruptly turned north onto S. Gina Ave, where Agent Dinise activated his vehicle's emergency lights and siren after pulling in behind the Dodge. The Dodge momentarily yielded, but then conducted a u-turn in the middle of the road almost side-swiping several cars in an attempt to evade Agent Dinise. The Dodge drove at a high rate of speed north through the Mobile Home Park until arriving at a dead end where the driver fled from the vehicle and left the passenger identified as, Crystal GUTIERREZ and her baby son in the vehicle. Agent Dinise physically and verbally identified himself as a United States Border Patrol Agent and questioned GUTIERREZ as to her and her son's citizenship. GUTIERREZ stated that both her and he son were United States Citizens. Agents with the help of El Cajon Police Officers searched the area for the absconded driver, but were unable to locate him. Agent Dinise placed GUTIERRREZ under arrest for conspiracy charges. At the Border Patrol Station, she stated that the driver of the Dodge was her boyfriend, Marcos Garcia. During the chase, Garcia Admitted to her that he was an illegal alien and that he feared being apprehended.

**DEFENDANT STATEMENT: GERARDO GUILLEN-Guiltran**

Gerardo GUILLEN-Guiltron was advised of his Miranda Rights. The defendant stated that he understood his rights, and agreed to provide a statement without an attorney present. The defendant **Gerardo Guillen** stated that he is a Mexican citizen and does not have, nor has he ever had, any documents that would allow him to legally enter or remain in The United States.

The defendant **Gerardo Guillen** stated that his brother Martin, called him and told him that him that he was going to cross into the United States illegally and needed $1,000 to pay a smuggling fee. The defendant stated that he did not have that much money. He was told to meet a man at a Chevron gas station, near Imperial Avenue and 47th Street to see what arrangements could be made.

**Gerardo Guillen** met with the man, whose name he does not know, and told him that he did not have enough money to pay his brother's smuggling fee. The man offered to waive the smuggling fee if the defendant would pick up the group of illegal aliens, which his brother was a part of. **Gerardo Guillen** agreed and the man gave him the key to a white pickup truck. The man, whom the defendant had made arrangements with, gave him directions to take Interstate 8 eastbound to Highway 79, make a left and re-enter Interstate 8. The man told **Gerardo Guillen** that someone would wave him down on the side of the freeway. The defendant stated that he spoke to his brother Martin over the phone so Martin could make sure everything was fine. **Gerardo Guillen** picked up the illegal aliens on the side of the road as instructed. **G. Guillen-Guiltron** was supposed to take the illegal aliens to an alley in San Diego near Ocean View and 38th Street. He also stated that no other cars were ahead of him or following him when he picked up the illegal aliens.



CONTINUATION OF COMPLAINT:
Gerardo GUILLEN-Guiltron
Martin GUILLEN-Guiltron
Joel CORTEZ-Mendoza

**Gerardo Guillen** stated that he owns a gold Dodge Intrepid, which is registered in his name. When confronted with the fact that agents observed a gold Intrepid following closely throughout the smuggling event, the defendant admitted that the man driving it was the same man he had made arrangements to smuggle with. **Gerardo Guillen** further stated that he had switched vehicles with the man at the gas station when they met.

### DEFENDANT STATEMENT: Martin GUILLEN-Guiltron

**Martin GUILLEN-Guiltron** was advised of his Miranda Rights. He stated that he understood his rights, and agreed to provide a statement without an attorney present. **Martin GUILLEN** stated that he is a Mexican citizen, and he does not have, nor has he ever had, any documents that would allow him to legally enter or remain in The United States.

**Martin GUILLEN** offered the following details as to his arrangements. He stated that he was going to be charged a smuggling fee of $1,500 to come to San Diego. He spoke to the smuggler and offered to bring people across the Border into The United States, with his friend Joel, if he would waive the smuggling fee for them. The smuggler agreed and gave **Martin GUILLEN,** and his friend defendant #3, a room in a hotel and food free of charge. **Martin GUILLEN** stated that his arrangements with the smuggler were over the telephone, but that defendant #3 met the smuggler in person, in Tijuana, Baja California.

**Martin GUILLEN** and **Joel CORTEZ-Mendoza,** guided approximately 10 illegal aliens into The United States. Both **Martin GUILLEN** and **Joel CORTEZ-Mendoza** guided the aliens to a location where they were picked up. The smuggler had told **Martin GUILLEN** that his brother would be driving the truck that would pick up the group. **Martin GUILLEN** called his brother and described a nearby road sign on Interstate 8, as saying "79" and Descanso on it. He then stated that his brother picked up the group of illegal aliens, including himself and **Joel CORTEZ-Mendoza** a half hour later.

### DEFENDANT STATEMENT: Joel CORTEZ-Mendoza

**Joel CORTEZ-Mendoza** was advised of his Miranda Rights. He stated that he understood his Rights and was willing to answer questions without an attorney present. **CORTEZ-Mendoza** admitted to being a citizen and national of Mexico, without proper immigration documentation that would enable him to enter or remain in the United States legally.

**CORTEZ-Mendoza** initially agreed to be smuggled illegally into the United States for $1,500 USD; however, he was later offered by an unknown smuggler to have his smuggling fee waived if he agreed to guide the group across the United States/Mexico Border. **CORTEZ-Mendoza** positively identified **Martin GUILLEN-Guiltron** as the main foot guide leading the group.

CONTINUATION OF COMPLAINT:
Gerardo GUILLEN-Guiltron
Martin GUILLEN-Guiltron
Joel CORTEZ-Mendoza

## MATERIAL WITNESSES STATEMENTS:

Material Witnesses **Emmanuel ROJAS-Roman, Jorge HERNANDEZ-Sanchez, and Sergio SALAZAR-Martinez,** stated that they are citizens and nationals of Mexico illegally present in the United States. They stated that they do not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Tijuana Baja California, Mexico to be smuggled into the United States. The three material witnesses stated that they were to pay from $1,500.00 to $1,800.00 U.S. dollars to be smuggled into the United States.

HERNANDEZ-Sanchez and SALAZAR-Martinez positively identified Martin GUILLEN-Guiltran and Joel CORTEZ-Mendoza as the foot-guides.

HERNANDEZ-Sanchez also positively identified Gerardo GUILLEN-Guiltran as the driver of the Ford.

ROJAS-ROMAN positively identified Martin GUILLEN-Guiltran as a footguide and Gerardo GUILLEN-Guiltran as the driver of the Ford.